UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE MCNELIS, individually and as Guardian ad litem for L.N. and L.N., a minor,<br><br>    Plaintiff,<br><br> v.<br><br>COUNTY OF EL DORADO, KIMBERLY PIERCE, CAITLYN HAYDEN, SAMANTHA DODGE, and DOES 1–10, inclusive,<br><br>    Defendants. | No. 2:22-cv-00369-DJC-JDP<br><br>ORDER APPROVING MINOR'S COMPROMISE |

   On July 5, 2023, Anne McNelis, Plaintiff, filed an *Ex-Parte* Petition for Approval of Minor's Compromise on behalf of her daughter, L.N., as Guardian *ad litem*. (*See Ex-Parte* Pet. for Approval of Minor's Compromise (ECF No. 36) [hereinafter Petition or Pet.].) The County of El Dorado, Kimberly Pierce, Caitlyn Hayden, and Samantha Hodge ("Defendants") filed a Joint Statement of Non-Opposition. (*See* ECF No. 37.) For the reasons discussed below, the Court GRANTS Plaintiff's *Ex-Parte* Petition and APPROVES L.N.'s Minor's Compromise. The Court will require Plaintiffs' counsel to inform the Court as to the final terms of the annuity once it has been funded. (*See* Ex. A (ECF No. 36-1 at 9–10) [hereinafter Petition Exhibit A or Ex. A]).

# BACKGROUND

This section 1983 case involving purely federal claims (*see* Compl. (ECF No. 1) ¶¶ 2-3, 210-23, 224-33, 234-42) and accompanying Minor's Compromise stem from the allegedly unlawful removal of L.N. from her mother, Anne McNelis. (*See* Pet. at 2.) In short, Anne McNelis originally had custody of L.N. until L.N.'s biological father and Anne McNelis's former partner, Paul Nuesmeyer, conspired with his friend to fabricate referrals containing allegations of abuse to Child Protective Services ("CPS"). (*See* Compl. ¶¶ 20, 29, 39-47, 59-97, 101-06,165, 179.) Because of these referrals, CPS, through Defendants Pierce, Hayden, and Hodge, eventually removed L.N. from Anne McNelis on February 27, 2020. (*See id.* ¶¶ 108-18, 116-28.) After Defendants removed L.N. from Anne McNelis, L.N. temporarily stayed in a foster shelter. (*See id.* ¶¶ 128, 142.) Nuesmeyer, with the help of his friend, then obtained custody of L.N. from March 2020 until June 2021 when Anne McNelis regained custody of L.N. (*See id.* ¶¶ 157-61, 192-93.) As a result of the allegedly unlawful removal, Anne McNelis incurred substantial financial and reputational costs, and "L.N. has suffered depression, sleeplessness, and social anxiety[,]" her grades have suffered, and she has been subject to school intervention (Compl. ¶¶ 206-08).

Following these events, Anne McNelis filed the Complaint on February 25, 2022. (*See* Compl. at 42.) The County of El Dorado and Hodge filed Answers to the Complaint on May 31, 2022. (*See* ECF Nos. 16 and 17.) Hayden and Pierce filed a Motion to Dismiss on the same day, arguing that the Complaint pleaded insufficient facts tying them specifically to the allegedly unlawful removal and subsequent events. (*See* ECF No. 15 at 2.) On December 30th, the Motion to Dismiss was denied and Hayden and Pierce were ordered to file their Answers. (*See* ECF No. 27.) Hayden and Pierce did so on January 19, 2023. (*See* ECF No. 29.)

Anne McNelis, via counsel, filed the instant Petition on July 5, 2023. (*See* Pet.) The Petition contained a declaration from Attorney Robert Powell (*see* Decl. of Robert Powell (ECF No. 36-1 at 1-8) [hereinafter Powell Declaration or Powell Decl.]), an

exhibit providing confirmation of L.N.'s structured settlement annuity (*see* Ex. A), and three declarations from attorneys that have worked with Plaintiffs' counsel in support of the attorneys' fees request (*see* Ex. B (ECF No. 36-1 at 11–29).  Defendants jointly filed a Statement of Non-Opposition the next day.  (*See* ECF No. 37.)

The terms of the Minor's Compromise include a $48,000 award to L.N. out of a $400,000 gross payout from Defendants.  (*See* Pet. at 6.)  Consistent with California law, Anne McNelis has decided that it was in the best interests of L.N. to use the proceeds to fund future periodic payments.  (*See id.*; Powell Decl. ¶ 17.)  The entire $48,000 will be placed in a structured settlement annuity that will pay L.N. one lump-sum payment of $20,000 on her eighteenth birthday, with monthly checks exceeding $500 beginning the following year on L.N.'s nineteenth birthday and guaranteed for at least the next five years.  (*See* Pet. at 6.)  In total, L.N. will receive more than the $48,000 initially awarded to her, and she is currently projected to obtain over $63,000 after the final payment occurs.  (*See id.*; Ex. A.)

As for the rest of the award, Anne McNelis agreed to retain Plaintiffs' counsel for a contingency fee of 40% taken from the gross award of $400,000, with Anne McNelis to take the remainder after the $48,000 is subtracted to fund L.N.'s structured settlement annuity.  (*See* Pet. at 6–7; Powell Decl. ¶ 7, 23.)  In plain terms, of the $400,000 award, L.N. takes $48,000, Anne McNelis takes $192,000, and Plaintiffs' counsel takes $160,000.  (*See* Pet. at 2.)  Anne McNelis paid for all costs associated with litigating the case, and she incurred costs related to visitation fees, totaling more than $90,000 according to the Petition.[1]  (*See* Pet. at 7–8; Powell Decl. ¶ 28.)  Therefore, there would be no further deductions from the total amounts listed of $48,000 to L.N., $160,000 to Plaintiffs' counsel, and $192,000 to Anne McNelis. However, Anne McNelis has agreed that should L.N. "require any further therapy or

---

[1] The Complaint described Anne McNellis as "also incur[ing] legal costs in excess of $130,000, professionally supervised visitation costs of approximately $10,400, expert witness fees, custody evaluation fees, ongoing therapy and counseling costs, and out of pocket medical expenses." (Compl. ¶ 206.)

treatment as a result of the damages she suffered as a result of the conduct complained of herein, Ms. McNelis will be responsible . . . without any claim for reimbursement from L.N.'s portion." (Powell Decl. ¶ 31; *see also* Pet. at 7–8 ("Ms. McNelis will undoubtedly utilize monies from her settlement proceeds for the benefit of L.N., as she is still a child in her mother's care.").)

**DISCUSSION**

**I.   Legal Standard**

"No claim by or against a minor or incompetent person may be settled or compromised absent an order by the Court approving the settlement or compromise." E.D. Cal. R. 202(b) (Mar. 1, 2022). The Local Rules require that the motion for approval of a proposed minor's compromise disclose, among other things: (1) the age and sex of the minor; (2) the nature of the causes of action to be settled or compromised; (3) the facts and circumstances out of which the causes of action arose, including the time, place and persons involved; (4) the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise amount; and (5) if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent. *See* E.D. Cal. R. 202(b)(2).

The Ninth Circuit held in *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) that Federal Rule of Civil Procedure 17(c) imposes a "special duty" on district courts approving a minor's compromise. "[T]his special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Id.* (citations omitted). However, this "special duty" has a limited scope of review, only asking "whether the net recovery of each minor plaintiff is fair and reasonable, without regard to the amount received by adult co-plaintiffs and what they have agreed to pay plaintiff's counsel." *Id.* at 1182. "If the net recovery of each minor plaintiff under the proposed settlement is fair and reasonable, the

district court should approve the settlement as presented . . . ." *Id.* In making this determination, "courts typically consider such information as the relative worth of the settlement amount, the circumstances of the settlement, counsel's explanation of their views and experiences in litigating these types of actions, and other similar compromises that have been approved by courts." *Rivett v. United States*, No. 2:21-cv-00717-DAD-AC, 2023 WL 4238909, at *2 (E.D. Cal. June 28, 2023) (collecting cases where the procedural posture was considered, the fact that the settlement occurred at a court-supervised settlement conference was considered, and other compromises were considered).

## II.  Analysis

The Petition itself omits some information required under the Local Rules, but all of the relevant information is provided by reference or by independent review of materials in the docket, which other courts have found non-fatal. *See, e.g.*, *McCue v. South Fork Union Sch. Dist.*, No. 1:10-CV-00233-LJO, 2012 WL 2995666, at *3–4 (E.D. Cal. July 23, 2012) (noting that "[t]he Court was able to dig through the filings and determine" the required information in a case involving Plaintiffs' counsel here). For the first requirement, L.N. is a biological female that is twelve years old, turning thirteen in November. (*See* Compl. ¶ 6; Ex. A.) For the second requirement, this case generally involves the allegedly unlawful removal of L.N. from her mother, Anne McNelis, on February 27, 2020, resulting in violations of the Fourth and Fourteenth Amendments. (*See* Pet. at 2 (citing Compl.).) For the fifth requirement, this case did not allege a personal injury claim.

Regarding the third requirement for the facts and circumstances out of which the cause of action arose, including the time, place and persons involved, the Petition references the Complaint for its discussion of the allegations, as this case did not involve extensive discovery. In brief, Defendants Hayden and Hodge investigated referrals to CPS regarding L.N.'s father, Nuesmeyer, beginning in 2018, but these referrals led to no conclusive results from CPS. (*See* ECF No. 19 at 2–4.) In May 2019,

Nuesmeyer allegedly concocted a scheme with a family friend to fabricate allegations of abuse and mistreatment permitted or perpetrated by Anne McNelis against her children to obtain custody of them from her, including claiming that one of Anne McNelis's other children sexually molested L.N.  (*See id.* at 2–7.)  Defendants ignored subsequent referrals regarding Nuesmeyer's care (or lack thereof) for Anne McNelis's children while Defendants pursued fabricated referrals regarding Anne McNelis, leading ultimately to the removal of L.N. from Anne McNelis on February 27, 2020.  (*See id.* at 4–8.)  L.N. then stayed briefly at New Morning Youth Shelter, was subjected to multiple interrogations by Defendants to which Anne McNelis did not consent, and was given to Nuesmeyer's custody after Nuesmeyer's friend continued to intervene and Defendants began to intervene.  (*See id.* at 8–11.)

While in Nuesmeyer's custody, L.N. and her siblings are alleged to have endured abuse and neglect.  (*See* Compl. ¶¶ 181, 195.)  The Complaint specifically alleges that, after L.N.'s unlawful removal from Anne McNelis, Nuesmeyer "hurt [L.N.'s] leg for telling" Anne McNelis something, which later required a brace; that Nuesmeyer and his then-girlfriend Jessica withheld food from L.N. and starved her to the point that L.N.'s doctor made a CPS referral, worried that L.N. was anorexic; that L.N. "decompensated after being placed in NUESMEYER's care[ ] [and] began to have injuries including burn marks, bruises, and what L.N. describes as hickeys" all of which culminated in L.N. refusing to see Nuesmeyer or his then-girlfriend Jessica as of the filing of the Complaint.  (*See* Compl. ¶¶ 166, 172, 182–87, 195, 204, 208.)

For the fourth requirement, for the terms of the settlement, Defendants agreed to settle all claims against them with all Plaintiffs, "which includes appeal rights of Plaintiffs and attorney fee claims," for $400,000."  (Pet. at 2.)  Because of the pre-existing retainer agreement, Plaintiffs' counsel propose to take 40% from the $400,000 gross settlement award ($160,000), leaving $240,000 to distribute between Anne McNelis and L.N.  (*See* Pet. at 6–7.)  The Petition approved by Anne McNelis asks that she receive $192,000 and L.N. receive the remaining 48,000.  The Petition justifies

...

this split because L.N. will continue to benefit from her mother's net settlement proceeds as Anne McNelis still cares for L.N.  (*See* Pet. at 7.)  The Petition suggests that "L.N.'s damages (particularly psychological) are not as extensive as they otherwise might be for this type of case – where a child is removed unlawfully from the care and custody of their parents or parent."  (*See* Pet. at 7; Powell Decl. ¶ 17 (stating the same).)  The Petition argues that though L.N. was removed from her mother, "she was never subjected to foster care or the foster care system to any egregious degree[,]" and "was then placed in the care of her father . . . a much more supportive and less psychologically damaging environment than she had been placed with a stranger in foster care."  (Pet. at. 7; *also* Powell Decl. ¶ 17 (stating the same).)

Attorney Powell explained his conclusions that L.N.'s net recovery under *Robidoux*, that the contingency fee request, and that the ultimate distribution of the gross settlement award, are all fair and reasonable in his Declaration.  Attorney Powell declared that "Plaintiff Anne McNelis, individually and in the capacity as guardian ad litem for her daughter, L.N., freely and voluntarily entered into an arm's-length attorney-client contract with [his] firm[,]" which led Anne McNelis to enter into an "arm's-length retainer agreement with [his] firm . . . ."  (Powell Decl. ¶¶ 23, 26.)  He stated that he usually applies a fee of at least 35% and claims that fees of 50% are not uncommon.  (*See* Powell Decl. ¶ 16.)  Attorney Powell gave the standard arguments why contingency rates are normally higher because of the inherent risk, particularly in civil rights cases where recovery is not guaranteed.  (*See* Powell Decl. ¶¶ 11–14.)  He provided several declarations submitted with an attorneys' fee motion following a trial in 2018 that a judge in the Northern District of California[2] approved, granting an "hourly fee at $600 an hour."  (Powell Decl. ¶ 18; *see* Ex. B (providing declarations in support of Plaintiffs' counsel's motion for attorneys' fees and costs (ECF Nos. 196-16,

---

[2] Attorney Powell claims that a judge in the Southern District of California approved the minor's compromise and attorneys' fee request, but *Morales* clearly arose in the Northern District of California. (*See* Powell Decl. ¶ 18.)

7

196-18, and 197-19) in *Morales v. County of Mendocino*, No. 3:16-cv-02429-EMC (N.D. Cal. May 16, 2018)).) He stated that he "along with [his] staff and my associated Counsel Samuel H. Park, spent hundreds of hours litigating this matter since the case was filed in February of 2022." (Powell Decl. ¶ 29.) Finally, he repeated the arguments in the Petition minimizing the harm L.N. experienced to justify the reduced amount to her. (*See* Powell Decl. ¶¶ 17, 28, 31–32.)

As for the fairness and reasonableness of the net settlement to L.N., Plaintiffs' counsel provided no helpful information, such as citations to cases involving similar facts. *Contrast with Nunes v. Cnty. of Stanislaus*, No. 1:17-cv-00633-DAD-SAB, 2022 WL 1744942, at *5 (E.D. Cal. May 31, 2022) (collecting cases provided to justify settlement in another case involving Plaintiffs' counsel), *R. and R. adopted*, No. 1:17-cv-00633-DAD-SAB, 2022 WL 2213989 (E.D. Cal. June 21, 2022). However, other courts have recognized that few cases appear involving the allegedly unlawful removal of a child from their family. *See, e.g.*, *Minors P.H. v. Cnty. of Riverside*, No. 5:15-cv-00890-VAP-SPx, 2020 WL 10893001, at *3 (C.D. Cal. Mar. 30, 2020) (citations omitted) (citing cases looking to wrongful death cases for an appropriate comparison). To determine the fairness and reasonableness of the net settlement to L.N., the Court reviewed several cases involving unlawful removals, *see, e.g.*, *Carefoot v. Cnty. of Kearn*, No. 1:17-cv-00456-AWI-JLT, 2019 WL 3026989, at *1 (E.D. Cal. July 11, 2019); *M.R. v. City of Los Angeles, et al.*, No. CV 16-8087-DMG (JPRx), 2018 WL 1912861 (C.D. Cal. Apr. 13, 2018); wrongful deaths, *see, e.g.*, *E.R. v. Cnty. of Stanislaus*, No. 1:14-cv-00662-DAD-SKO, 2016 WL 3354334, at *3 (E.D. Cal. June 16, 2016); *Doe ex rel. Scott v. Gill*, No. C 11-4759 CW, 2012 WL 1939612, at *1 (N.D. Cal. May 29, 2012); and sexual misconduct, *see Allstate Ins. Co. v. Doe 1*, No. 19-cv-1402-JM-AGS, 2020 WL 7258724, at *1 (S.D. Cal. Dec. 10, 2020), *R. and R. adopted*, No. 19-cv-1402-JM-AGS, 2021 WL 8153630 (S.D. Cal. Jan. 8, 2021); *Doe by and through Doe v. Clark Cnty.*, No. 2:17-cv-02380-MMD-PAL, 2019 WL 266286, at *1 (D. Nev. Jan. 18, 2019).

From this review, the Court is troubled by counsel's requested 40% contingency fee in this case, given the general consensus in this District that 25% is a reasonable amount and the established benchmark for attorney's fees in contingency cases involving minors. *See, e.g.*, *McCue*, 2012 WL 2995666, at *6; *Rivett*, 2023 WL 4238909, at *3 (citing cases from 2007, 2008, and 2013); *Chance v. Prudential Ins. Co. of Am.*, No. 1:15-cv-1889-DAD-JLT, 2016 WL 3538345, at *3 (E.D. Cal. June 29, 2016) (collecting cases). While the Court has no doubt that Attorney Powell is an experienced litigator in this area (*see* Powell Decl. ¶ 19), it was Attorney Park that signed the Complaint and the Opposition to the Motion to Dismiss. Finally, the Court notes that the Motion to Dismiss constituted the only contested motion practice before this Court, and that it appears that the parties only engaged in six months' worth of discovery since the Answer was filed in this case. Given a review of the full record available to the Court, a fee award of $160,000 could be considered excessive.

Ultimately, however, this Court's focus is limited to "whether the net recovery of each minor plaintiff is fair and reasonable, without regard to the amount received by adult co-plaintiffs and what they have agreed to pay plaintiff's counsel." *Robidoux*, 638 F.3d at 1182. Based on the Court's independent review of the cases cited *supra*, the Court finds that $48,000 as an initial award that can grow to exceed $60,000 is a fair and reasonable amount in light of the facts of the case, L.N.'s specific claim, and recovery in similar cases. *Compare with Carefoot*, 2019 WL 3026989, at *2–3 (minor in an unlawful removal case receiving $11,500); *M.R.*, 2018 WL 1912861 (minor in an unlawful removal case receiving $130,000); *E.R.*, 2016 WL 3354334, at *3 (four minors in a wrongful death case receiving $19,000); *Doe ex rel. Scott*, 2012 WL 1939612, at *1 (minor in a wrongful death case receiving $7,188.85); *Doe by and through Doe*, 2019 WL 266286, at *2 (minor that was sexually assaulted in a group home setting receiving $28,341.18). *Contrast with Allstate Ins. Co.*, 2020 WL 7158724, at *3 (minor at time but young adult over eighteen years old at time of award in a case involving sexual misconduct receiving $75,000). Key for this Court finding that this award is fair

and reasonable is that there are no substantive allegations about sexual abuse suffered by L.N. following her unlawful removal, thus making the unlawful removal cases the more apt comparison because that appears to be the primary harm alleged and suffered here.  In the unlawful removal cases, recovery normally spans the low four-digit and five-digit range (ranging from $7,000 to $28,000 with an outlier of $130,000).  Therefore, L.N.'s initial award of $48,000 seems fair and reasonable in light of the facts of the case, L.N.'s specific claim, and recovery in similar cases.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Anne McNelis's *Ex-Parte* Petition for Approval of Minor's Compromise for L.N (ECF No. 36).  Plaintiffs' counsel is instructed to proceed with obtaining the structured settlement as per the terms in Petition Exhibit A, and Plaintiffs' counsel is ORDERED to provide a report to the Court within 30 days of the annuity being funded with the following information: (1) the expected total payout; (2) the number of months L.N. is expected to receive monthly payments; (3) how much those monthly payments will be; and (4) when those payments will end.

IT IS SO ORDERED.

Dated:   **September 5, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE